**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

NANCY ALLARD,                                    Civil No. 11-3279 (NLH/KMW)

        Plaintiff,

                        **OPINION**

     v.

CAROLYN EISENHAUER,

           Defendant,

---

CAROLYN EISENHAUER,

       Third-Party
Plaintiff,

      v.

CITY OF SEA ISLE CITY and
SEA ISLE CITY BEACH PATROL,

      Third-Party
Defendants.

---

**APPEARANCES:**

Robert A. Fineberg, Esquire
Robert A. Fineberg, P.C.
208 North Main Street
Cape May Court House, New Jersey 08210
    *Attorney for Plaintiff Nancy Allard*

Daniel J. Distasi, Esquire
Green, Lundgreen, and Ryan, P.C.
1010 Kings Highway South,
Bldg. 2
Cherry Hill, New Jersey 08033
    *Attorney for Defendant/Third-Party Plaintiff Carolyn*
    *Eisenhauer*

Robert P. Merenich, Esquire
Gemmel, Todd, and Merenich, P.A.
767 Shore Road
P.O. Box 296
Linwood, New Jersey 08221
    *Attorney for Third-Party Defendants City of Sea Isle City
    and Sea Isle City Beach Patrol*

**HILLMAN, District Judge**

    This matter comes before the Court by way of Third-Party

Defendant City of Sea Isle City's motion [Doc. No. 24] seeking

summary judgment pursuant to Federal Rule of Civil Procedure 56

with respect to Third-Party Plaintiff Carolyn Eisenhauer's claim

that it is liable for Plaintiff's damages as Eisenhauer's

employer.  The Court has considered the parties' submissions and

decides this matter pursuant to Federal Rule of Civil Procedure

78.

    For the reasons expressed below, Third-Party Defendant City

of Sea Isle City's motion for summary judgment will be denied.


**I.   JURISDICTION**

    The Court exercises jurisdiction over this matter pursuant

to 28 U.S.C. § 1332 based on diversity of citizenship and an

amount in controversy in excess of $75,000.  Plaintiff Nancy

Allard (hereinafter, "Allard" or "Plaintiff") is a citizen of

the Commonwealth of Massachusetts.  Defendant and Third-Party

2

Plaintiff Carolyn Eisenhauer (hereinafter, "Eisenhauer") is a citizen of the State of New Jersey.  Therefore, complete diversity of citizenship exists between the parties.  The amount in controversy is met because the allegations contained in Plaintiff's complaint sufficiently demonstrate that the damages sought are in excess of $75,000, exclusive of interest and costs.

After Plaintiff initiated suit against Eisenhauer, Eisenhauer filed a third-party complaint against the Sea Isle City Beach Patrol[1] and Sea Isle City, New Jersey.  For purposes of assessing whether complete diversity of citizenship exists between the parties, the Court need only consider the citizenship of Plaintiff and Defendant Eisenhauer and not that of Third-Party Defendant City of Sea Isle City (hereinafter, "Sea Isle City") because, "it is not required that diversity of

---

[1] Although Eisenhauer named the Sea Isle City Beach Patrol as a Third-Party Defendant in this action, the proper Third-Party Defendant is the City of Sea Isle City because the Sea Isle City Beach Patrol is an agency of the municipality which cannot be sued independently.  See Schmidt v. City of Bayonne, 2007 WL 1461152, at *1 n.1 (N.J. Super. Ct. App. Div. 2007) (noting that Bayonne Public Works Department was not a separate legal entity); Daniels v. Pemberton Tp. Water Dept., 2013 WL 1316022, at *1 n.1 (N.J. Super. Ct. App. Div. 2013) (observing that Pemberton Township Water Department was not a separate legal entity, but merely a department of the Township).

citizenship exist between the third-party defendant and the
plaintiff, or... between defendant, as third-party plaintiff,
and the third-party defendant." New Hampshire Ins. Co. v.
Diller, 678 F. Supp. 2d 288, 292 (D.N.J. 2009) (citing Spring
City Corp. v. Am. Bldgs. Co., 193 F.3d 165, 169 (3d Cir. 1999)).


II.  **BACKGROUND**

The basic facts of this case are undisputed and relate to
Plaintiff's allegations that she sustained serious injuries
after being struck by a car driven by Eisenhauer in the summer
of 2009.  That summer, Eisenhauer was beginning her second
season as a lifeguard for the Sea Isle City Beach Patrol.
(Third-Party Defendant's Statement of Undisputed Material Facts
[Doc. No. 24-1] (hereinafter, "Sea Isle City's Statement"), ¶¶
1-2; Defendant and Third-Party Plaintiff's Counter Statement of
Undisputed Material Facts [Doc. No.25] (hereinafter,
"Eisenhauer's Statement), ¶¶ 1-2.)  At that time, Eisenhauer was
under the age of eighteen and held the status of a junior
lifeguard.[2]  (Tr. of Eisenhauer's Dep. [Doc. No. 24-2] 12:10-12,

---

[2] The record reflects, and Sea Isle City does not appear to
dispute, that Eisenhauer was treated as a junior life guard by
the Beach Patrol due to her age.  It appears that Eisenhauer was
approximately seventeen years old at the time of the accident

26:7-17.)

On June 27, 2009, the date when Plaintiff was struck, Eisenhauer was assigned to start her shift working on the 43rd Street beach in the morning and then, come noon, she was to complete her shift working on the 65th Street beach.  (Sea Isle City's Statement ¶¶ 7-9; Eisenhauer's Statement ¶¶ 7-9.) Eisenhauer was "expected" to find her own means of transportation from one beach assignment to the next. (Eisenhauer's Statement, ¶¶ 6-7; Sea Isle City's Statement, ¶ 15.)  On the date in question, Eisenhauer used her father's[3] 2002 Toyota Camry to travel from her morning assignment at the 43rd Street beach to her afternoon assignment on 65th Street.  (Sea Isle City's Statement ¶ 9; Eisenhauer's Statement ¶ 9.)  While en route to her second assignment on 65th Street beach,[4] Eisenhauer struck Plaintiff and knocked her over as Plaintiff was crossing Landis Avenue. (Plaintiff's Complaint [Doc. No. 1]

────────────

since she had a valid New Jersey driver's license.

[3]Eisenhauer's father, Stephen Eisenhauer, was also named as a Defendant in this action but both Plaintiff and Defendant later stipulated to his dismissal.  (Stipulation of Dismissal as to Stephen Eisenhauer [Doc. No. 27].)

[4]The City disputes that Eisenhauer was solely on her way to her next beach assignment at 65th Street, arguing that she may have also been on a personal errand to get lunch. (Sea Isle City's Mot. 8)  The Court addresses this contention infra.

(hereinafter, "Pl.'s Compl."), ¶ 3.)  Plaintiff sustained serious and permanent physical injuries stemming from the accident.  (Id. ¶ 5.)  Based on these facts, Plaintiff asserts a negligence claim against Eisenhauer and demands judgment for compensatory damages, interest, and costs of suit.  (Id.)

As set forth supra, after Plaintiff brought this action, Eisenhauer filed a third-party complaint against Sea Isle City claiming that as an employee of the Beach Patrol, she was acting as an agent and/or representative of Sea Isle City at the time of the subject accident.  (Defendant and Third Party Plaintiff Complaint [Doc. No. 17] (hereinafter, "Eisenhauer's Compl."), ¶ 4).  Furthermore, Eisenhauer asserts that to the extent her conduct constitutes negligence, Sea Isle City is responsible for Plaintiff's damages on the basis of vicarious liability. (Id. ¶ 5).  Sea Isle City subsequently answered Eisenhauer's third-party complaint and raised several affirmative defenses, including that Eisenhauer was not acting within the scope of her employment at the time of the accident.[5]  (Third-Party Defendant's Answer to Eisenhauer's Complaint [Doc. No. 19] (hereinafter, "Sea Isle City's Answer") 2.)

---

[5] Sea Isle City also alleged several other affirmative defenses none of which discussed herein.

III. **DISCUSSION**

A.    **Summary Judgment Standard**

Sea Isle City, as Eisenhauer's employer at the time of the accident, now seeks the entry of summary judgment in its favor on Eisenhauer's claims for defense and indemnification, based on its contention that she was not acting within the scope of her employment at the time of the accident.  (Third-Party Defendant's Motion for Summary Judgment [Doc. No. 24-1] (hereinafter, "Sea Isle City's Mot.") 6.)  Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  "In considering a motion for summary

judgment, a district court may not make credibility determinations or engage in any weight of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." (citation omitted);  see also Singletary v. Pa. Dept of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharge by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden

8

of proof.") (citing <u>Celotex</u>, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the... pleading[s.]" <u>Saldana v. Kmart Cop.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Cooper v. Sniezek</u>, 418 F. App'x 56, 58 (3d Cir. 2011) (citing <u>Celotex</u>, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57.

**B.  Liability of Public Entities & Respondeat Superior**

As Sea Isle City points out, pursuant to the New Jersey Tort Claims Act, a public entity, like the City, "is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner

9

and to the same extent as a private individual under like circumstances." N.J. STAT. ANN. § 59:2-2(a). The New Jersey Supreme Court has explained that "[t]he primary liability imposed on public entities is that of respondeat superior: when the public employee is liable for acts within the scope of that employee's employment, so too is the entity; conversely, when the public employee is not liable, neither is the entity." Tice v. Cramer, 627 A.2d 1090, 1094.

The New Jersey Tort Claims Act further provides that "[l]ocal public entities are ... empowered to indemnify local public employees consistent with the provisions of" the Act. N.J. STAT. ANN. § 59:10-4. Regardless "[w]hether the authority to indemnify originates under the common law, the Tort Claims Act or a specific statute, ... , the [indemnification] analysis initially focuses on what acts can be characterized as being 'within the scope of employment.'" Palmentieri v. City of Atlantic City, 555 A.2d 752, 756 (N.J. Super. Ct. Law Div. 1988).

Similarly, under the doctrine of *respondeat superior*, an employer can be held liable for the negligence of an employee which causes injury to a third party, so long as, at the time of the incident, the employee can be said to be acting within the

scope of his or her employment.  Carter v. Reynolds, 815 A.2d
460, 463 (N.J. 2003) (citing Lehmann v. Toys 'R' Us, Inc., 626
A.2d 445, 461 (N.J. 1993) (quoting Restatement (Second) of
Agency § 219 (1958)).  In order to hold an employer liable for
an employee's negligence based upon a theory of respondeat
superior, one must prove: "(1) that a master-servant
relationship existed and (2) that the tortious act of the
servant occurred within the scope of that employment." Carter,
815 A.2d at 463.

**C. Scope of Employment Under New Jersey Law**

As the New Jersey Supreme Court has recognized, "[s]cope of
employment is a commonly cited principle, but its contours are
not easily defined." Carter, 815 A.2d at 465; see also
Palmentieri, 555 A.2d at 756 (recognizing that "[o]ur courts
have cited several authorities in attempting to define the
concept.").  Although sometimes a malleable concept, in New
Jersey,

> [c]onduct is generally considered to be within
> the scope of employment if, "it is of the kind
> [that the servant] is employed to perform; it
> occurs substantially within the authorized time
> and space limits; [and] it is actuated, at
> least in part, by a purpose to serve the
> master."

Carter, 815 A.2d at 465 (citing Di Cosala v. Kay, 450 A.2d 508,

11

513 (N.J. 1982) (citing Restatement (Second) of Agency § 228

(1957))).  Conduct which falls within the scope of employment

essentially

> refers to those acts which are so closely
> connected with what the servant is employed to
> do, and so fairly and reasonably incidental to
> it, that they may be regarded as methods, even
> though quite improper ones, of carrying out the
> objectives of employment.

Carter, 815 A.2d at 465 (citing Di Cosala, 450 A.2d at 513).


**IV.  ANALYSIS**

In order to establish that she is entitled to

indemnification with respect to Plaintiff's claims, Eisenhauer

must demonstrate that a master-servant relationship existed

between her and Sea Isle City, and that at the time of accident

with Plaintiff, Eisenhauer was acting within the scope of her

employment.  See Palmentieri, 555 A.2d at 756; Carter, 815 A.2d

at 463.  As a threshold matter, the Court notes that Sea Isle

City does not dispute that a master-servant relationship existed

between Eisenhauer and the City, and challenges only whether

Eisenhauer was acting within the scope of her employment at the

time the accident occurred.

Sea Isle City thus argues that summary judgment is

12

appropriate on Eisenhauer's third-party claims since no
reasonable juror could conclude that Eisenhauer was acting
within the scope of her employment under the Restatement because
her conduct in driving a vehicle was not "of the kind" that she
was employed to perform since Sea Isle City did not require
lifeguards to drive from one beach to another.  (Br. of Sea Isle
City [Doc. No. 24-1] 7; see also Reply Br. of Sea Isle City
[Doc. No. 26] 2-3) (emphasis added).  According to Sea Isle
City, Eisenhauer "cannot sustain any argument that she was
expected to drive her vehicle as part of her job duties" because
there is "no evidence that [she] was compelled by her employer
to drive from one beach assignment to another[.]"  (Reply Br. of
Sea Isle City [Doc. No. 26] 3.)

Several New Jersey Courts have recognized the inherent
difficulty of determining when any employee's tortious conduct
is properly considered within his or her scope of employment.
See, e.g., Roth v. First Nat'l State Bank of N.J., 404 A.2d
1182, 1184 (N.J. Super. Ct. App. Div. 1979) (noting "[t]he term
'scope of employment,'... is an elastic one, and none of the
commonly found definitions thereof can be relied upon with
assurance either for negative or affirmative absolute criteria
of liability."); Carter, 815 A.2d at 465 (observing that term

13

"is so devoid of meaning in itself that its very vagueness has been of value in permitting a desirable degree of flexibility in decisions.") (citing W. Page Keeton, et al., Prosser and Keeton on the Law of Torts §§ 4, 69 at 21-23, 499-501 (5th ed. 1984)); Carter v. CPA, 783 A.2d 724, 726 (N.J. Super. Ct. App. Div. 2001) (acknowledging that the scope of employment question is "simply framed but not as easily answered."). As a result, New Jersey courts view scope of employment as a relatively malleable concept, resulting in outcomes that are largely fact specific to the circumstances of each case. See Roth, 404 A.2d at 1184.

As the parties here acknowledge, New Jersey courts analyzing this fact specific inquiry look to the factors set forth in the Restatement (Second) of Agency in order to answer the scope of employment question. Carter, 815 A.2d at 465 (acknowledging that in New Jersey scope of employment is subject to analysis under Restatement sections 228 and 229). Under the Restatement, an employee's conduct is generally considered to be within the scope of employment if it: (1) "is of the kind [that the servant] is employed to perform;" (2) "occurs substantially within the authorized time and space limits;" and (3) "is actuated, at least in part, by a purpose to serve the master." Carter, 815 A.2d at 465 (citing Di Cosala, 450 A.2d at 513).

Accordingly, the Court must first consider whether Eisenhauer's conduct was "of the kind" that she was employed to perform through her duties as a lifeguard for Sea Isle City. Sea Isle City's primary contention here is that Eisenhauer was not acting within the scope of her employment because none of a lifeguard's duties involve driving a vehicle. (Sea Isle City's Statement ¶¶ 22-25; Sea Isle City's Mot. 7.) In support of this argument, Sea Isle City points out that the May 2008 Training Manual, which sets forth the duties expected of Sea Isle City's lifeguards, makes "no reference to driving, or the ability to drive[.]" (Sea Isle City's Statement ¶ 22.) Sea Isle City further proffers that the training manual expressly states that the guard's duty is solely to "protect and prevent individuals from incurring any injuries or mishaps in the water and on the beach." (Id.); (see also Sea Isle City Training Man. § I(iii).) Thus, Sea Isle City focuses its argument primarily on the specific issue of driving a vehicle, asserting that driving a vehicle was not one of the required duties Eisenhauer was employed to perform, and therefore, her conduct was not "of the kind" she was employed to carry out. (See Sea Isle City's Mot. 6-7.)

Eisenhauer counters that the relevant conduct here is not

15

her particular method of transportation on the date of the subject accident, but, more generally, the relevant conduct is her travel between beaches — conduct which is "of the kind" she was employed to perform.  According to Eisenhauer, by assigning her to two different stations for the morning and afternoon at two separate beaches, 22 blocks apart, during the same shift, the Sea Isle City Beach Patrol necessitated that she travel from one beach assignment to the next as part of her employment. (Eisenhauer's Opp'n. to Third-Party Def.'s Mot. for Summ. J. [Doc. No. 25] (hereinafter, "Eisenhauer's Opp'n.")).

In considering Sea Isle City's argument that Eisenhauer's conduct was not "of the kind" that she was employed to perform, New Jersey law recognizes that the Court may examine whether the actions at issue "are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."  Carter, 815 A.2d at 465 (citing Di Cosala, 450 A.2d at 513).  Sea Isle City's argument focuses specifically on the narrow issue that driving a vehicle was not a required duty that Eisenhauer was employed to perform as a lifeguard.  By contrast, Eisenhauer's argument focuses more broadly on the

necessity of traveling — regardless of the mode of
transportation — between two beaches during the same scheduled
shift in order to fulfill her other employment duties of
guarding the beach and the water.

Eisenhauer contends that the act of traveling from one
beach to another, in and of itself, was so closely connected to
her job duties and so fairly and reasonably incidental to the
execution of those duties, that her actions were "of the kind"
she was employed to perform and thus fall within the scope of
her employment, even if her method of travel (i.e., driving) was
not required by the City or was otherwise improper.  This Court
agrees.  Upon examining the record here and the parties
arguments, the Court finds that Sea Isle City has failed to
demonstrate that Eisenhauer's conduct was not: (1) closely
connected to what she was employed to do, or (2) fairly and
reasonably incidental to it.  Therefore, as explained more fully
below, Sea Isle City has fallen short of establishing that
Eisenhauer's her conduct was not "of the kind" she was employed
to perform.

The Sea Isle City Beach Patrol Assignment Sheet for the
subject date, June 27, 2009, indicates that four lifeguards,
including Eisenhauer, were assigned to stations on two separate

17

beaches, thus necessitating them to travel, by some means, from

one beach station to the next in order to continue their duties.[6]

(Sea Isle City's Mot. at Ex. E.)  The distances these lifeguards

needed to travel between their respective beach assignments

varied with distances of 10 blocks, 11 blocks, 21 blocks, and

for Eisenhauer – the furthest distance – 22 blocks.  (Sea Isle

City's Mot. at Ex. E.)  Thus, one thing is plain — no matter the

distance, each of these guards had to find some way to travel to

their second beach assignment during the course of their

scheduled shift.  Therefore, it is readily apparent that in

order for Eisenhauer to execute and perform the duties she was

employed to carry out — guarding the beach and the water at both

---

[6] Importantly, Sea Isle City does not dispute that on the
day in question, Eisenhauer was "required ... to move [from the
43rd Street Beach] to the 65th Street Beach later in the day."
(Eisenhauer's Counter Statement of Material Facts [Doc. No. 25]
¶ 3; Sea Isle City's Reply to Counter Statement [Doc. No. 26] ¶
3.)  In response to Eisenhauer's contention that the City
"required her to travel from the 43rd Street Beach to the 65th
Street Beach prior to ... the day of the subject accident[,]"
Sea Isle City only disputes this statement of fact only "to the
extent that 'travel' in anyway suggests that Ms. Eisenhauer was
required to use her vehicle[.]"  (Sea Isle City's Reply to
Counter Statement ¶ 5.)  Moreover, Sea Isle City readily admits
that "[a]s a junior guard, [Eisenhauer] was expected to find her
own means of transportation from one beach patrol assignment to
the next."  (Id. ¶ 6) (admitting statement of fact "to the
extent that Ms. Eisenhauer could walk, run, bike, skate board or
drive to her next assignment.").

43rd Street and 65th Street that day — Eisenhauer had to be physically present at both beaches during her shift. Accordingly, she had to travel from the first beach to the second that day.  Whether intentionally or unintentionally, Sea Isle City set up its shift schedule assignments in a manner which resulted in, and necessitated that, Eisenhauer travel between beaches to execute her duties.[7]

Sea Isle City's argument that Eisenhauer's conduct was not "of the kind" she was employed to perform focuses solely on the narrow concept of whether driving was a required duty Eisenhauer was employed to perform.  Sea Isle City contends that Eisenhauer is not entitled to indemnification because she chose to drive a vehicle as a matter of personal convenience, rather than any job required duty.  This argument is unavailing, however, because it misunderstands the "of the kind" inquiry.  For conduct to be considered "of the kind" an employee was employed to perform, the conduct need not be only that which is expressly required and authorized by the employer.  Rather, conduct can satisfy the "of the kind" inquiry where it is "closely connected" and

_____

[7] Again SIC does not dispute the fact that travel was required.  The City simply challenges Eisenhauer's chosen method of travel.  See <u>supra</u>, n.6.

"fairly and reasonably incidental" to what the employee is employed to do.  See Carter, 815 A.2d at 465; cf. Palmentieri, 555 A.2d at 756-57 (observing that the "[f]actors to be considered in determining whether a municipal employee's conduct falls within the ... scope of ... her employment are whether ... her conduct was primarily employment rooted, [and] was reasonably incidental to the performance of [her] employment duties," among other things).

Here, the record clearly demonstrates that the nature of the Beach Patrol's procedures for scheduling and assigning lifeguards to different beaches, multiple blocks apart, as part of the same work shift necessarily required the lifeguards, including Eisenhauer, to travel between beaches in order to be present to perform her duties of guarding the beach and the water.  There is sufficient evidence in the record to support Eisenhauer's argument that the act of traveling between beaches, regardless of the mode of travel, was "closely connected" and "fairly and reasonably incidental" to her lifeguard's duties and the execution thereof.  Carter, 815 A.2d at 465 (citing Di Cosala, 450 A.2d at 513).  Accordingly, Sea Isle City has failed to establish that Eisenhauer's conduct was not "of the kind" she was employed to carry out.

Next, the Court must determine whether Eisenhauer's conduct occurred substantially within the authorized time and space limits of her duties as a lifeguard.  For similar reasons as set forth <u>supra</u>, Sea Isle City's contention that Eisenhauer's duties as a lifeguard only encompassed the areas of the beach and water, is only partially accurate.  (Sea Isle City's Statement ¶ 23.)  Although the majority of a Sea Isle City lifeguard's duties take place on the beach and in the water, to the extent that Sea Isle City implemented an assignment schedule that necessitated the lifeguards to travel from one station to another, the spatial limits of their employment must correspondingly grow to include that course of travel.  Moreover, so long as this course of travel is not, "far beyond the authorized space limits," the lifeguards' conduct will remain within the scope of their employment while in transit from one beach to the next.  <u>Carter</u>, 815 A.2d at 465 (citing <u>Di Cosala</u>, 450 A.2d at 513.)

Eisenhauer argues here that by assigning one lifeguard to two geographically distant beaches, Sea Isle City obligates the assigned lifeguard to travel from her first beach assignment to her second beach assignment in order to fulfill her lifeguard duties for that day.  (Eisenhauer's Opp'n. 9.)  In creating the

need to travel by virtue of varied assignments, Sea Isle City
thus expanded the authorized space limits of Eisenhauer's job to
include her route to the 65th Street beach.  Further, Sea Isle
City has not presented sufficient evidence to demonstrate that
Eisenhauer took an obscure route while traveling to her second
beach assignment.[8]  Accordingly, Sea Isle City has failed to

---

[8] Sea Isle City attempts to argue that Eisenhauer may have
been on a personal errand to get lunch at the time of the
accident.  (Sea Isle City's Mot. 8)  Sea Isle City bases this
contention on the mere fact that Eisenhauer testified at her
deposition that she could not remember if she brought her lunch
to work on June 27, 2009 and that she previously had driven to
get lunch on other occasions.  (Id.)  Sea Isle City thus assumes
that because Plaintiff cannot recall whether or not she brought
her lunch, she must have been on a personal errand to get lunch
at the time of the accident.

However, Eisenhauer testified affirmatively that she was
not going to get lunch at the time and was strictly reporting to
her 65th Street beach assignment. (Eisenhauer's Opp'n. ¶¶ 8-10.)
On a motion for summary judgment, the Court cannot make
credibility determinations or weigh the evidence, but rather,
Eisenhauer's evidence, as the non-moving party, is to be
believed and all justifiable inferences are to be drawn in her
favor. Marino v. Industrial Crating Co., 358 F.3d at 247 (3d
Cir. 2004).  Accordingly, drawing all reasonable inferences in
favor of Eisenhauer, the Court finds that Sea Isle City has not
demonstrated that Eisenhauer was on a personal errand to get
lunch at the time of the accident or was otherwise taking an
obscure route to her second beach assignment.

Even if the Court assumed arguendo that Eisenhauer was on a
personal errand to get lunch before arriving at the 65th Street
Beach Station, it remains undisputed that Eisenhauer's ultimate
destination was her duty station on the 65th Street Beach and
that she was traveling to 65th Street in order to complete her
shift that day.  "To relieve a master from liability for an act
done by the servant who was engaged in his master's work, the
act done by such servant must have been entirely disconnected

establish that Eisenhauer's route of travel to 65th Street was not substantially within the authorized space limits of her job.

As to time, Sea Isle City has similarly failed to demonstrate that Eisenhauer's conduct did not occur within the authorized time limits of her duties as a lifeguard.  The Sea Isle City Beach Patrol requires each lifeguard to remain on duty from the beginning of their shift until the end of their shift, unless they are under the age of eighteen.[9]  (Sea Isle City Training Man. § II(I)(E)(19).)  Lifeguards under the age of eighteen, like Eisenhauer was at the time of the accident, are required to take a half hour lunch break from either: (a) 12:30-1:00 p.m.; or, in circumstances where there are two junior guards working at the same beach station, (b) 1:00-1:30 p.m. (Id. at § II(I)(E)(42).)

_____

from the service."  Efstathopoulos v. Federal Tea Co., 196 A. 470, 472-73 (N.J. 1938).  Where there is "proof ... that the social phase of the trip was merely incidental to, and not entirely disconnected from, the primary business phase thereof" a finding that the servant "made the trip for [her] master while acting within the scope of [her] employment" is fully justified.

Assuming for purposes of this motion that Eisenhauer stopped to get lunch, such a stop off prior to arriving at 65th Street is simply "incidental to, and not entirely disconnected from, the primary business" purpose of her trip since she was ultimately set to arrive at 65th Street to complete her shift.

[9] Duty hours for lifeguards are from 9:20 a.m. to 5:00 p.m. on weekdays and until 5:30 p.m. on weekends. (Sea Isle City Training Man. § II(i)(E)(19) 7.)

23

The record indicates that the usual practice for lunch breaks when there were two junior guards present at the same beach station was for the junior guard who had most recently arrived to the beach station to remain on the stand, while the other junior guard who had been stationed there since the morning took the earlier of the two lunch break times. (Eisenhauer's Dep. Tr. 32:11-24.)  The accident between Eisenhauer and Plaintiff took place at approximately 12:09 p.m. while Eisenhauer was en route to her second beach assignment on 65th Street.  (The City's Statement ¶ 2).  At the earliest then, Eisenhauer's lunch break would not have begun until 12:30 when she was expected to arrive at her second assignment on 65th Street beach.[10]  It thus appears that there is evidence in the record which suggests that Eisenhauer remained on duty at the time she traveled to the 65th Street Beach, and could fairly be considered as acting within the authorized time limits of her employment when the accident occurred.  Accordingly, Sea Isle City has not established that Eisenhauer's conduct did not occur

---

[10] As stated supra, it was standard practice for the lifeguard who had most recently arrived on the stand to take the later of the two lunch breaks. It is therefore, most likely that Eisenhauer would have taken her lunch at 1:00 p.m. rather than 12:30 p.m.

substantially within the authorized time and space limits of her employment as required under the Restatement.

Finally, the Court must assess whether Eisenhauer's conduct was done, at least in part, to serve her employer, the Sea Isle City Beach Patrol.  As stated supra, in assigning individual lifeguards to two different beach stations, multiple blocks apart, as part of the same shift, the Sea Isle City Beach Patrol necessitated that these lifeguards travel from their first assigned beach to their second assigned beach to fulfill their duties for the day.  At the time of the accident with Plaintiff, Eisenhauer was traveling to her second beach assignment ostensibly under the direction of the Beach Patrol given the structure of the lifeguard shift assignments.  Although it was her choice to drive a vehicle due to its convenience rather than to use some alternative means of travel (walking, running, biking, etc.), the evidence suggests that her conduct was done "at least in part, by a purpose to serve," the Sea Isle City Beach Patrol in order to fulfill her shift assignment duties on 65th Street that day.[11]  See Carter, 815 A.2d at 465 (citing Di

_____

[11] To the extent that Sea Isle City argues that Eisenhauer was outside the scope of her employment because she was "engaged in [a] wholly unauthorized lifeguard activity i.e. texting," at the time of the accident, Sea Isle City's argument is futile. (Sea Isle City's Reply to Eisenhauer's Opp'n. [Doc. No. 26]

<u>Cosala</u>, 450 A.2d at 513).

Through its procedures for scheduling and assigning lifeguards to geographically distant beach assignments, the Sea Isle City Beach Patrol made it necessary for its lifeguards to travel between their beach assignments.  As a result, this act of traveling became part of the duties that each lifeguard was employed to perform in order to ultimately guard the beach and the water.  For the reasons set forth <u>supra</u>, Sea Isle City has failed to establish that Eisenhauer's conduct of traveling to her second beach assignment on 65th Street, was not of the kind that she was employed to perform, was not within the authorized time and space limits of her duties as a lifeguard, and was not

---

(hereinafter, "Sea Isle City's Reply"), 3.)
    In New Jersey, courts have held that if an "act resulting in [the] injury complained of[,] was within [the] scope of [the] servant's employment, [the] master will be liable, although [the] act was ... expressly forbidden by him[.]" <u>Wright v. Globe Porcelain Co.</u>, 179 A.2d 11, 14 (N.J. Super. Ct. App. Div. 1962).  Even assuming that Eisenhauer was engaged in "wholly unauthorized" conduct, i.e. texting, while she was driving, such allegedly negligent activity would not be sufficient to remove her from the scope of her employment.  As the court in <u>Prado v. State</u> specifically pointed out, even where an employer "does not authorize and indeed implicitly prohibits its employees from driving negligently or in violation of motor vehicle laws in the course of their employment... this does not mean that such motor vehicle operation is outside the scope of employment." <u>Cf. Prado v. State</u>, 908 A.2d 816, 824 (N.J. Super. Ct. App. Div. 2006).

done to serve the Sea Isle City Beach Patrol.  Having found that Sea Isle City has not met its burden with respect to any of the Restatement factors, the Court finds that Sea Isle City is not entitled to summary judgment on Eisenhauer's third-party claims.

## V.   Notice to Sea Isle City: Contemplation of Summary Judgment in Favor of the Non-movant Caroline Eisenhauer

In deciding Sea Isle City's motion for summary judgment on Eisenhauer's claims for indemnification with respect to the scope of employment issue and denying Sea Isle City's motion, the Court has considered in great detail the Restatement factors relevant to this issue.  In doing so, it appears to the Court that there may be sufficient undisputed facts to establish that Eisenhauer was in fact acting within the scope of her employment at the time of the accident and thus is entitled to summary judgment on this issue.  For reasons unknown to the Court, Eisenhauer did not cross move for summary judgment on the scope of employment issue.

The Third Circuit previously acknowledged that "'authority has developed to allow a court to grant summary to a non-moving party'" so long as the court provides the adversarial party with notice that it is considering a *sua sponte* summary judgment motion.  Gibson v. Mayor and Council of City of Wilmington, 355

F.3d 215, 222 (3d Cir. 2004) (citation omitted).  Subsequently, in 2010, Federal Rule of Civil Procedure 56 was amended and now expressly provides that "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant[.]"  FED. R. CIV. P. 56(f)(1).  Thus, under this Rule, the Court may properly consider whether Eisenhauer is entitled to summary judgment on the scope of employment issue for her indemnification claim even in the absence of a formal motion so long as Sea Isle City is provided with notice and a reasonable time to respond.

Accordingly, the Court hereby gives notice to Sea Isle City that it is contemplating entering summary judgment in favor of the nonmovant, Eisenhauer, on the basis that Eisenhauer was acting within the scope of her employment at the time of the accident and is thus entitled to have her employer defend and indemnify her with respect to Plaintiff's claims arising from that accident.  Sea Isle City will have fourteen (14) days from the date of this Opinion to show cause why summary judgment should not be entered in favor of Eisenhauer on the issues outlined in this Opinion.  Eisenhauer will have seven (7) days thereafter to reply to Sea Isle City's response.[12]

---

[12] The Court will grant reasonable extensions of these

**VI.   CONCLUSION**

For the foregoing reasons, Third-Party Defendant the City of Sea Isle City's motion for summary judgment is denied.  An Order consistent with this Opinion will be entered.


Dated:  September 13, 2013           s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

_____

deadlines if good cause is shown, or by consent of the parties.